IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-00394-CBS

ANGELICA M. DEHERRERA,
    Plaintiff,
v.

CAROLYN W. COLVIN,
    Defendant.

---

MEMORANDUM OPINION AND ORDER

---

This action comes before the court pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83(c), for review of the Commissioner of Social Security's final decision denying Angelica M. DeHerrera's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated December 2, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to D.C.Colo.LCivR 72.2 and Title 28 U.S.C. § 636(c). (*See* Doc. 18). The court has carefully considered the Complaint (filed February 13, 2014) (Doc. 1), Defendant's Answer (filed July 28, 2014) (Doc. 9), Plaintiff's Opening Brief (filed October 13, 2014) (Doc. 13), Defendant's Response Brief (filed November 10, 2014) (Doc. 14), the entire case file, the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

**BACKGROUND**

In February 2011, Plaintiff filed an application for disability benefits, alleging a disability onset date of June 14, 2010. (*See* Social Security Administrative Record (hereinafter "AR") at 227-28, 229-36). Plaintiff alleged that her ability to work was limited by a disk herniation at L5-S1, nerve damage in her left leg, and anxiety. *See Id*. at 272. Plaintiff was born on July 14, 1987, and was 22 years old on the date of her alleged disability onset. *Id*. at 139, 147. She completed the 12th grade and has previous work experience as a part-time caregiver. *Id*. at 147-48. After her initial application was denied, Plaintiff requested a hearing, which was held on August 21, 2012, before an Administrative Law Judge ("ALJ"). *See Id*. at 142-68, 200.

Plaintiff represented herself at the hearing[1] and testified that she suffered from debilitating back pain, pain in her leg, and anxiety. *Id*. at 148. She stated that she had previously worked as a part-time personal caregiver, but she had to stop because of the medications that she was taking. *Id*. at 147-48. When asked how much weight she could lift, Plaintiff stated that she didn't lift anything over ten pounds. *Id*. at 148. She also testified that she could sit for thirty to forty-five minutes per day, and that she walked a quarter mile per day. *Id*. She stated that although she tried to spend time with her two children — reading books and doing puzzles — her husband was primarily responsible for their care. *Id*. at 149-51. Plaintiff testified that she could do some dishes and cooking, and that she could also do some of the grocery shopping; however, Plaintiff said that her mother had to wash the family's laundry. *Id*. at 156-57.

Plaintiff's father-in-law also testified at the hearing regarding Plaintiff's condition. He stated that because of her alleged disability, Plaintiff could not work, had trouble taking care of the children, and could not keep her house clean. *Id*. at 158. He further stated that when he

---

[1] The ALJ informed Plaintiff of her right to be represented by an attorney or a non-attorney representative. (AR at 144-45). Plaintiff chose to proceed without representation. *Id*. at 145.

visited, Plaintiff was usually sleeping. *Id*. He did testify, however, that Plaintiff did most of the cooking for the family. *Id*. at 160.

A vocational expert ("VE") also testified at the hearing. *Id*. at 161-65. The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with the same education and past work experience as Plaintiff — had the following limitations: (1) only lift or carry up to 10 pounds frequently and 20 pounds occasionally; (2) stand or walk with normal breaks for a total of six hours in an eight hour work day; (3) sit with normal breaks for a total of six hours in an eight hour work day; (4) perform pushing and pulling motions with upper and lower extremities within the weight restriction; (5) avoid unprotected heights and moving machinery; (6) perform postural activities — climbing of ramps or stairs, balancing, stooping, crouching, kneeling, and crawling — only occasionally; and (7) avoid climbing ladders, ropes, or scaffolds. The ALJ also noted that the job should be of limited complexity, with a Specific Vocational Preparation ("SVP")[2] of 3 or less. *Id*. at 162-63.

Based on these limitations, the VE identified three "light" exertional jobs, which someone with those limitations could perform and testified about the number of each position in the regional and national economy: (1) retail marker, SVP: 2 (5,050 Colorado; 313,723 National); (2) order filler, SVP: 3 (2,293 Colorado; 142,431 National); and (3) silverware wrapper, SVP: 1 (1,867 Colorado; 107,450 National). *Id*. at 163-64.

The ALJ then posed a second hypothetical in which she asked the VE to assume that this same individual would be restricted in these additional ways: (1) could lift or carry less than ten pounds frequently and up to ten pound occasionally; and (2) stand or walk with normal breaks for a total of two hours in an eight hour work day. *Id*. at 164. The VE testified that a person

---

[2] Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

under these restrictions could function as a telemarketer, SVP: 3 (4,439 Colorado; 177,337 National); an appointment clerk, SVP: 3 (2,354 Colorado; 121,745 National); and a clerical sorter, SVP: 3 (457 Colorado; 53,570 National). *Id*. at 164-65.

In the third hypothetical, the ALJ asked the VE to assume that due to the combination of impairments and due to pain, the individual would be unable to sustain the concentration, persistence, and pace necessary to consistently fulfill a 40 hour work week. The VE was asked to further assume that the individual would miss more than four days of work in a month. *Id*. at 165. The VE testified that there would be no employment for such an individual. *Id*.

On September 27, 2012, the ALJ issued her decision denying benefits. *Id*. at 20-36. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[3] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since June 14, 2010. *Id*. at 133. At step two, the ALJ found that Plaintiff had the following severe impairments: (1) disk herniation; (2) adjustment disorder; (3) generalized anxiety disorder; (4) headaches; and (5) chronic pain syndrome. *Id*. The ALJ further concluded that despite being seen on several occasions for abdominal pain, there were no diagnoses or objective medical evidence for Plaintiff's symptoms; therefore, Plaintiff's abdominal pain did not constitute an impairment. *Id*. at 134. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*.

The ALJ then assessed the following residual functional capacity ("RFC"):

---

[3] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant is limited to work of limited complexity that has an svp of 3 or less with minimal to no direct contact with the public; can lift and carry 10 pounds frequently and 20 pounds occasionally; can stand and/or walk with normal breaks for 6 out of 8 hours; sit with normal breaks for 6 out of 8 hours; can perform pushing and pulling with the upper and lower extremities within the aforementioned weight limitations; should avoid unprotected heights and moving machinery; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and can never climb ladders, ropes, or scaffolds.

*Id*. at 135.

In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's records. The ALJ noted that although Plaintiff's medically determinably impairments could reasonably be expected to cause the alleged symptoms, the evidence did not support a finding that Plaintiff was as limited as she claimed. *Id*. at 136. The ALJ also noted that Plaintiff's exam findings were not consistent with her allegations. *Id*. Indeed, the ALJ observed that the objective medical evidence — as opposed to Plaintiff's subjective statements to her providers — showed only mild limitations. *Id*. 136-37. The ALJ cited the observation of Dr. Bernard Guiot, a spinal neurosurgeon, that Plaintiff's gait difficulties were far more dramatic during her exam than when she was seen entering and exiting the office. *Id*. at 137. In addition, the ALJ credited the opinion of Dr. Kimberlee Terry, a state agency consultant, who reviewed Plaintiff's medical records and prepared a physical RFC assessment. *Id*. at 138. Dr. Terry concluded that Plaintiff's symptoms were not disabling and that Plaintiff was reasonably limited to light level activities. *Id*. at 177-78. The ALJ also found Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "not credible." *Id*. at 136.

The ALJ afforded great weight to the opinion of Dr. Mark Berkowitz, another state agency consultant, who reviewed Plaintiff's file and prepared a mental RFC evaluation. *Id*. at 139. Dr. Berkowitz concluded that Plaintiff was capable of performing work at the lower level of semi-skilled tasks with reduced public contact. *Id*. at 180. The ALJ found that these conclusions were consistent with the evidence of record. *Id*. at 139.

At step four, because all of Plaintiff's previous work was part-time, the ALJ found that Plaintiff did not have any past relevant work. *Id*. at 162, 139. At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 140. Specifically, the ALJ found that Plaintiff could work as a retail marker, an order filler, or a silverware wrapper. *Id*. Because there were a significant number of jobs that Plaintiff could perform, the ALJ concluded that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. at 140-41. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff retained an attorney, and requested review by the Appeals Council. *Id*. at 125, 126-27. The Appeals Council denied her request on December 11, 2013. *Id*. at 1-6. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on February 13, 2014. (Doc. 1). The court has jurisdiction to review the final decision of the Commissioner.  42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial

evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ (1) erred in her analysis of Plaintiff's complaints of chronic pain; (2) failed to properly develop the record; (3) failed to support the mental RFC with substantial evidence; and (4) erred in concluding that Plaintiff is capable of performing other jobs in significant numbers.

### A.     Chronic Pain

On appeal, Plaintiff contends that the ALJ erred in analyzing the evidence regarding her chronic pain. She further faults the ALJ for failing to include an RFC limitation related to her complaints of chronic pain. The court perceives no reversible error.

"'To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Subjective complaints of pain alone are insufficient to establish a disability. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (internal citations omitted). To determine whether pain is disabling, the ALJ is entitled to examine the medical record and evaluate a claimant's credibility. The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). The ALJ's credibility determination must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). However, the ALJ is not required to engage in a formalistic factor-by-factor recitation of the evidence. *Id*.

In this case, the ALJ considered the entire record and concluded that Plaintiff's complaints regarding the severity of her symptoms were not entirely credible. (AR at 136). In reaching this conclusion, the ALJ noted a number of inconsistencies between Plaintiff's subjective complaints and the objective medical evidence. For example, despite Plaintiff's claims of debilitating pain, she usually demonstrated normal sensation and reflexes in her lower extremities. *See Id*. at 421, 447. In addition, a 2010 MRI of her back revealed a "barely discernable" disk protrusion. *Id*. at 308-09, 384, 389. A 2012 MRI had nearly identical findings.

*Id*. at 522. Further, Dr. Guiot noted that these MRI findings were not proportionate to her extreme claims of pain. *Id*. He also noted that Plaintiff's gait difficulties were far more dramatic during her examination than when she was seen entering and exiting the office. *Id*. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) ("Exaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by [the] Court[.]"). Similarly, although Plaintiff indicated that she needed a cane, she was rarely observed using one by her treating providers. *See Id*. at 137. The ALJ also highlighted the fact that Plaintiff's medication regimen had been stable, suggesting that Plaintiff's pain was reasonably controlled with the use of pain medications and muscle relaxers. *Id*. Indeed, Plaintiff admitted that her symptoms were relieved with pain medications, physical therapy, and stretching. *Id*. at 567, 573. This directly supports the ALJ's conclusion that Plaintiff "was capable of performing more extensive work activities than she acknowledged." *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001).

      Plaintiff's citation to evidence that would support a contrary conclusion is not persuasive. Even if "the evidence may have also supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Therefore, the court concludes the ALJ's RFC assessment was sufficiently supported by substantial evidence, and also that the ALJ did not err in excluding a limitation based on chronic pain.

### B.     Duty to Develop the Record

Plaintiff asserts that the ALJ erred in failing to further develop the record. (*See* Doc. 13 at 19-21). Specifically, she argues that Dr. Terry's functional capacity evaluation was deficient because Dr. Terry never actually examined Plaintiff. Consequently, Plaintiff contends that the ALJ should have ordered a consultative examination. This argument is not well taken.

An ALJ has broad latitude in ordering consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (citing *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). "[W]here there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for the proper resolution of a disability claim." *Id*. (internal citations omitted). Here, however, no such situation exists. Rather, the administrative record contains ample treatment records related to Plaintiff's back pain, and these records sufficiently explore Plaintiff's condition. Indeed, the ALJ relied on these records in concluding that Plaintiff's herniated disk and chronic pain constituted severe impairments. (AR at 133). The fact that the ALJ ultimately concluded that Plaintiff's impairment was not as limiting as she contended, does not support Plaintiff's request for a new consultative examination.

Plaintiff also argues an exam was necessitated by the fact that Dr. Terry's report — prepared in May 2011 — was completed without the benefit of Dr. Guiot's March 2012 report. (Doc. 13 at 20). The court is not persuaded. In his report, Dr. Guiot noted that Plaintiff suffered from chronic pain, but he also specifically concluded that her responses to examination were "significantly out of proportion" with the objective medical evidence. (AR at 522). Dr. Guiot also noted that Plaintiff was observed entering and existing the office with much more ease than that demonstrated during her examination. *Id*. In addition, Dr. Guiot concluded that Plaintiff

exhibited 4/5 positive Waddell signs, "which is a significant red flag for somatization response."[4] *Id*. Thus, the court is not persuaded that Dr. Guiot's report conflicts with, or would have changed, Dr. Terry's conclusions. *See Diaz*, 898 F.2d at 778 (refusing to remand for a consultative examination where the plaintiff had produced no objective evidence that he suffered from depression). And Plaintiff has not identified any other objective evidence in the record suggesting that her back impairment required further medical inquiry. *Hawkins*, 113 F.3d at 1167.

Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raise,'" the ALJ met that duty here. *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).

### C.   Plaintiff's Mental RFC

Plaintiff also argues that the ALJ's mental RFC was not supported by the substantial evidence. (Doc. 13 at 21-24). Specifically, Plaintiff contends that the ALJ erred in giving little weight to the opinion of Dr. Wesley, the consultative psychologist who examined Plaintiff once and concluded that she had impaired concentration, persistence, pace, social interaction, and adaptation. (*See* AR at 517). Plaintiff also argues that the ALJ erred in assigning great weight to the opinion of Dr. Berkowitz, who concluded that Plaintiff was not significantly impaired. *See Id*. at 179-80. The court disagrees with both contentions.

---

[4]  "Waddell's test," is a clinical test for patients with low back pain that can be used to indicate whether the patient is exaggerating symptoms. *See Smithson v. Astrue,* 2011 WL 5368812, *8 n. 6 (N.D. Fla. October 13, 2011) (Waddell's sign is a sign for nonorganic pain . . . Waddell's signs are a group of physical signs that may indicate a non-organic or psychological component to lower back pain. Waddell's signs are also used to detect malingering or exaggeration in patients complaining of lower back pain) (citing Waddell, Gordon; John McCulloch, Ed Kummel, Robert Venner (March/April 1980), "Nonorganic Physical Signs in Low–Back Pain," SPINE 5(2):117–125).

Under the regulation, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (internal quotation marks omitted).

Where, as here, the medical opinions at issue do not constitute "treating sources,"[5] the court, nevertheless, evaluates the opinion by applying the same factors that are generally used to assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6).

With regard to Dr. Wesley's opinion — that Plaintiff had impaired concentration, persistence, pace, social interaction, and adaptation — the ALJ specifically noted that this determination was inconsistent with the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ also concluded that Dr. Berkowitz's opinions *were*

---

[5] A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a relationship that requires both duration and frequency. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."). Dr. Berkowitz provided a one-time consultative review of Plaintiff's medical records, and Dr. Wesley examined Plaintiff on a single occasion.

consistent with Plaintiff's medical records. (AR at 139). These observations are well-supported by the substantial evidence.

Plaintiff has not had any treatment for her mental impairments, and none of Plaintiff's treating sources found Plaintiff to have impaired concentration or behavioral abnormalities. To the contrary, throughout her medical records, Plaintiff's providers consistently note that she "is oriented to time, place, person, and situation," that she "has normal insight, [and] exhibits normal judgment," and that she "demonstrates the appropriate mood and affect." *Id*. at 421, 426, 569-70, 575. Further, Dr. Wesley's conclusions were inconsistent with Plaintiff's GAF[6] score of 61, *id*. at 516, which is indicative of only mild symptoms.

Tellingly, Plaintiff has not pointed to any evidence in the record that would necessitate a different conclusion with regard to the mental RFC. Ultimately, the court views Plaintiff's argument as little more than a thinly veiled request for this court to reweigh the evidence, which it cannot do. *Oldham*, 509 F.3d at 1257. This court may review only the sufficiency of the evidence; and in this case, there was enough evidence to support the ALJ's findings. *Id*. Thus, the court concludes that the ALJ did not err in her evaluation of the medical evidence. The court further concludes that the mental RFC was supported by substantial evidence.

**D.      Sufficient Jobs in the National Economy that Plaintiff can Perform**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993). Here, the ALJ found that "there are jobs that exist in significant numbers

---

[6] The Global Assessment of Functioning (GAF) "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of [social, occupational, and psychological] functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (Text Revision 4th Ed. 2000) ("DSM-IV")).

in the national economy that the claimant can perform." (AR at 140). Specifically, the ALJ found that Plaintiff could work as a retail marker, an order filler, or a silverware wrapper. *Id*. Plaintiff argues that this finding is not supported by substantial evidence. The court disagrees.

Plaintiff contends that the three occupations identified by the VE were last studied in 1977 and, therefore, those occupations do not exist in the numbers described by the VE. Plaintiff has neither provided any evidence, nor cited any case law to support this bare argument. Rather, Plaintiff's prolix contention relies solely on her own speculation, "common sense," and the arguments of counsel. This will not suffice. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

Step five of the sequential analysis requires the ALJ to determine whether the claimant possesses the RFC "to perform other work in the national economy in view of [her] age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987)). Because the burden shifts to the Commissioner at step five, "the claimant is entitled to benefits if the Secretary cannot establish that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id*. (internal quotation marks and citations omitted).

At the hearing, the ALJ posed hypotheticals to the VE that involved all of the physical and mental aspects of the RFC ultimately adopted by the ALJ. (*See* AR at 162-63). The VE testified that someone with those restrictions could work as a retail marker, an order filler, or a silverware wrapper. *Id*. at 163. The VE characterized these jobs as light with an SVP of 3 or lower. *Id*. The VE further stated that her testimony had been consistent with the occupational descriptions and characteristics as provided in the Dictionary of Occupational Titles and its

companion publications. *Id*. at 165. Based upon this, the court concludes that the ALJ's determination at step five is supported by substantial evidence. The ALJ elicited proper testimony from the VE to demonstrate that Plaintiff could perform other work that existed in significant numbers in the State of Colorado and the national economy.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. DeHerrera was not disabled within the meaning of Titles II and XVI of the Social Security Act and, therefore, not eligible to receive Disability Insurance Benefits or Supplemental Security Income benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own fees and costs.

DATED at Denver, Colorado, this 11th day of March, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge